**SIGNED THIS: July 23, 2015**

_____
**William V. Altenberger
United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DAVID P. GODWIN, | ) | No. 13-80551 |
| Debtor. | ) | |
| | ) | |
| CHARLES E. COVEY, Trustee, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 13-8059 |
| | ) | |
| KATHERINE J. GODWIN, | ) | |
| Defendant. | ) | |

**O P I N I O N**

The matter before the Court is the Trustee's motion for summary judgment along with the Defendant's motion to strike the Trustee's reply to the Defendant's response to the Trustee's motion and the Trustee's motion to strike the Defendant's sur-reply to the Trustee's motion.

The basic facts are as follows. The Debtor and the Defendant are husband and wife. Each had their own sources of income. On December 23, 2002, the Defendant entered into a customer access agreement with Wachovia Bank governing the deposit of funds with the bank. On May 15,

2003, the Debtor entered into an identical agreement with the bank.[1]  Subsequently, Wachovia Bank merged into Wells Fargo Bank, which continued to recognize the two customer access agreements. Both the Debtor and the Defendant deposited their own funds into the Wells Fargo Bank account. The Defendant also had a bank account in her sole name at the Commerce Bank.

On February 14, 2013, judgments were entered against the Debtor in Illinois state court for $6,022,112.47 and $1,204,422.51.  On January 15, 2013, and March 11, 2013, a total of $286,000 was transferred from the Wells Fargo Bank account to the Commerce Bank account.  On March 21, 2013, the Debtor filed a Chapter 11 petition in bankruptcy, which was subsequently converted to a Chapter 7 case in bankruptcy.  After the conversion, the Chapter 7 Trustee in bankruptcy filed an adversary proceeding against the Defendant.  The amended complaint contains 10 counts and the Trustee's motion for summary judgment is under Count II of the amended complaint seeking to recover the $286,000 as a fraudulent conveyance pursuant to § 548(a)(1)(B) of the Bankruptcy Code. 11 U.S.C. § 548(a)(1)(B).[2]

Section 548(a)(1)(B) provides in pertinent part that a trustee may avoid a transfer of a debtor's property where the debtor received less than a reasonably equivalent value in exchange for the transfer when the debtor was in one of three fragile financial conditions: insolvency, possessing unreasonably small capital, or believing a debtor would incur debts beyond his/her ability to repay after the transfer.  5 COLLIER ON BANKRUPTCY §§ 548.05[2] and [3].

There is no dispute that both the Debtor and the Defendant had independent sources of income that were deposited into the Wells Fargo Bank account.  Nor is there any dispute as to who made the deposits, when they were made and in what amounts, or the nature and amounts of the withdrawals.

---

[1] The customer access agreements are "designed to eliminate subsequent signature cards and authorizations when opening future accounts."  The parties have stipulated these are the only written signature cards produced by Wells Fargo Bank.

[2] The motion for summary judgment was originally filed as to Count V as well, but the Trustee subsequently dropped Count V from the motion.

2

The Defendant contends that the account at Wells Fargo Bank was owned by her and that the Debtor was merely a signatory and not an owner. The Defendant also contends that the majority of the funds in the Wells Fargo Bank account came from the Defendant's separate funds.

This Court will first address the Defendant's motion to strike the Trustee's reply to Defendant's response to the motion for summary judgment for failure to comply with local rule 7.1(D) of the United States District Court for the Central District of Illinois. At the onset, it should be noted that there are 25 paragraphs to the response to which the Trustee replied and that the Defendant is objecting to only 14 of the replies. Therefore, the appropriate remedy is not to strike the whole reply. Rather, should any particular paragraph be found not in compliance with the local rule and the Court deems it appropriate, the remedy would be to strike the non-complying reply.

The second point to be noted is that the local rule provides that "any filings not in compliance may be stricken by the court." The local rule does not state the non-complying filing "shall" be stricken. Rather the local rule, by using the word "may," gives the Court discretion as to whether to strike the non-complying filing. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994)(noting that the decision whether to apply a local rule strictly is a matter left to the district court's discretion.)

The basis of the Defendant's motion is that the Trustee's reply does not comply with District Court Rule 7.1(D)(3) which provides as follows:

Movant's Reply:

Within 14 days after service of response, the movant may file a reply. The reply must include the following subsections, appropriately titled:

(a)   Reply to Additional Material Facts

   List by number the additional facts asserted in Section (b)(5) of the response. For each fact, state succinctly whether:

   (1)   it is conceded to be material and undisputed,

3

(2) it is conceded to be material but is disputed, in which case provide support [for] the claim that the fact is disputed by providing citations to specific pages of evidentiary documentation. Include as exhibits all cited documentary evidence not already submitted,

(3) it is immaterial but disputed, in which case state the reason the fact is immaterial and support the claim that the fact is disputed by providing citations to evidentiary documentation, attached as exhibits and referenced by specific page,

(4) it is immaterial and undisputed, in which case explain the reason it is immaterial,

(5) A failure to respond to any numbered fact will be deemed an admission of that fact.

Turning to the Defendant's specific objections to the Trustee's reply, the Defendant asserts that the Trustee's reply to the Defendant's additional facts in paragraphs 1, 2, 3, 5, 6, 9, 13, 21 and 24 do not comply with local rule 7.1(D)(3), in that the reply does not succinctly state whether these additional facts are material or immaterial.

In paragraphs 1, 3, 9 and 13 of the Trustee's reply, the Trustee admits the additional facts in the Defendant's response. Even though the reply does not use the specific language of sub-section (a) of the local rule by admitting the additional facts, the Trustee admits they are "undisputed" and without contesting their materiality, admits they are "material." Further, in the Trustee's reply to the motion to strike, the Trustee concedes the materiality of the facts.

In paragraphs 2, 5, 6, 21 and 24 of the Trustee's reply, the Trustee denies the additional facts in the Defendant's response, but does not state whether the additional facts are "material" or "immaterial." The Trustee's reply goes on to either reference exhibits or add an explanation why the additional facts are denied. The Seventh Circuit has held that Rule 7.1 does not prohibit the clarification of additional facts in a reply. *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014). If an allegation of fact is denied, it must follow it is "disputed." The Trustee's reply

4

essentially says the additional facts are "disputed" and if found to be true they are "material," thereby complying with sub-paragraphs (2) or (3) of the local rule.

In paragraphs 11, 15, 19, 20 and 25, the Trustee merely states the additional facts are "immaterial" and irrelevant, without saying whether they are "disputed." However, he does add an explanation as to why he believes them to be "immaterial" or irrelevant. The Trustee's reply in essence says he is not disputing the facts, but they are "immaterial." The explanation complies with sub-paragraph (3) or (4) of the local rule.

The Defendant also asserts that Trustee's reply violates Rule 7.1 (D) in that the argument section exceeds five pages. Under Rule 7.1 (D)(5), "[t]he argument section of a reply shall not exceed five double-spaced pages in length." Although the argument section of the Trustee's reply exceeds five double-spaced pages by three pages, this Court finds it to be a *de minimus* violation. *See Commonwealth Ins. Co. v. Titan Tire Corp.*, 2005 WL 3299405 at *1 (C.D.Ill. 2005) (holding that the violation is *de minimus* when the argument section exceeds five double-spaced pages).

This Court finally notes that motions to strike are disfavored. *See Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258*, 688 F.Supp.2d 815, 830 (C.D.Ill.2010); *Zuppardi v. Wal-Mart Stores, Inc.*, 2013 WL 5236644, at *4 (C.D.Ill. 2013). In *Nuzzi*, the court denied the defendant's motion to strike because the non-moving party had responded to the movant's deficient filing. Similarly, the Defendant in this case has responded to the Trustee's Reply to Defendant's Response to Trustee's Motion for Summary Judgment. Therefore, the Defendant's Motion to Strike should be denied.

Not surprisingly, the Trustee filed a motion to strike the Defendant's sur-reply to the Trustee's motion for partial summary judgment, asserting a sur-reply was not authorized by the Court and the Defendant did not obtain Court approval prior to filing it. The sur-reply basically rehashes arguments previously made by the Defendant and adds nothing new to the substantive

issues before the Court or which surprises the Trustee. Therefore, exercising discretion, this Court does not believe the sur-reply should be stricken.

Turning to the substantive issues, the first issue is whether the Defendant was the sole owner of the account at Wells Fargo Bank or whether the Defendant and the Debtor were co-owners. The identical two customer access agreements both state:

> If more than one person is named in the title for any account, such account will be considered a joint account.

A joint bank account is one in the names of two or more persons, and payable to any of them when the account was opened or thereafter. *In re Estate of Harms*, 236 Ill.App.3d 630, 603 N.E.2d 37, 42 (Ill.App. 4 Dist. 1992) (interpreting 765 ILCS 1005/2). The statute also requires a signed agreement including the right of survivorship. 765 ILCS 1005/2. This requirement is met when the signed agreement provides that the amounts deposited therein could be withdrawn by any signatory. *Id.* at 42. That is exactly what the customer access agreements contemplated and how the Defendant and the Debtor utilized the Wells Fargo Bank account. Both the Defendant and the Debtor had the right to make deposits into and withdrawals from, and made deposits into and withdrawals from, the Wells Fargo Bank account. Therefore, the Defendant and the Debtor are joint owners of the Wells Fargo account.

Which leads to the next substantive issue: what portions of the funds in the Wells Fargo account, which were transferred to the Commerce Bank account, are traceable to the Debtor for purposes of transfer avoidability? Under Illinois law, the Trustee has established that a debtor is a *prima facie* owner of those funds when he establishes it is a joint account. *Society of Lloyd's v. Collins*, 284 F.3d 727, 730 (7th Cir. 2002)(citing *Leaf v. McGowan*, 13 Ill.App.2d 58, 141 N.E.2d 67, 71 (Ill.App. 1 Dist. 1957)). Then the burden is on the Defendant to prove what part of the funds belonged to the non-debtor party. *Id.* The two main factors used in determining the ownership of

6

the funds in a joint account are the exercise of control over the funds and contributions to the account. *Highsmith v. Dep't of Pub. Aid*, 345 Ill.App.3d 774, 803 N.E.2d 652, 657 (Ill.App. 2 Dist. 2004).

As previously stated, there is no dispute that both the Defendant and the Debtor had independent sources of income that were deposited into the joint Wells Fargo Bank account. Nor is there any dispute as to who deposited what amounts and when, and who made withdrawals and for what purposes and when.

The parties dispute whether the funds transferred from ContinuityX accounts 0204, 1247, 6857, and 6144 into the Wells Fargo account were for the benefit of the Debtor. The Trustee argues that the funds deposited by ContinuityX were debts owed to the Debtor and thus were for the benefit of the Debtor. To support this, the Trustee submitted the Debtor's testimony at his 2004 Examination. In his testimony, the Debtor clearly testified that all the funds transferred from ContinuityX were deferred compensation or expense reimbursements owed to him. To the contrary, the Defendant asserts that, based on the Debtor's affidavit, the funds deposited by ContinuityX were for the benefit of the Defendant. The Defendant also argues that the funds could not have been for repayment of money the Debtor had lent, as ContinuityX was indebted to the Debtor after said transfers.

This Court agrees with the Trustee that ContinuityX's indebtedness does not undermine the Trustee's argument that the funds were for the benefit of the Debtor, as ContinuityX could have made partial payment to the Debtor. In addition, this Court notes that the Defendant's statements in his affidavit contradict his prior unambiguous testimony at his 2004 Examination. This Court also notes that the statements in the Debtor's affidavit are inherently inconsistent.[3] The Seventh Circuit Court

---

[3] In paragraph 14 of his affidavit, the Debtor stated "[w]hen I was owed monies for expense reimbursement from ContinuityX, I received those amounts [which] were [directly] deposited into a Chase checking account held jointly with K. Godwin." In paragraph 22 of the same document, the Debtor stated: "To the best of my knowledge and best recollection, all payments by continuity X into the Wells Fargo account were intended to be for the benefit of K. Godwin, but of the amounts identifiable as my payroll."

7

of Appeals has held that a party cannot create a genuine issue of fact by merely contradicting prior given testimony. *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996). Thus, this Court finds that the Debtor's affidavit does not create a genuine issue of disputed fact and the funds transferred from ContinuityX were attributable to the Debtor.

As the Defendant asserts the funds in the Wells Fargo account were hers, to refute the potential argument that the Debtor made a gift to her of the Debtor's contributions into the Wells Fargo account, the Trustee contends, based on the Debtor's testimony, that there was no gift because the Debtor exercised control over his contributions in the Wells Fargo account and lacked any donative intent. In support of his contention there was no gift to the Defendant, the Trustee asserts that if the funds in the Wells Fargo account were the Defendant's, there would have been no need to transfer them to the Commerce account. He goes on to argue that the Debtor's contributions to the Wells Fargo account remained the Debtor's property, subject to the claims of his creditors and the transfers to the Commerce account were made to prevent creditors from reaching his property. The Defendant provided no response to the Trustee's contention. As the Trustee's argument has merit and the Defendant has not responded to it, this Court concludes the Debtor's contributions into the Wells Fargo account were not a gift to the Defendant.

The Trustee then contends that FIFO is the appropriate method for tracing the funds. The Defendant contends it is the LIBR. Citing *In re Lantz*, 451 B.R. 843 (Bankr.N.D.Ill. 2011) and *In re Lichtenberger*, 337 B.R. 322 (Bankr.C.D.Ill. 2006), the Defendant argues that the method chosen should be the one that produces the best result for the Defendant, which is LIBR. Attached as "Attachment 1" is a chart showing the Trustee's step by step calculations, using "first in, first out" (FIFO), or the amount he contends was traceable to the Debtor. Also attached as "Attachment 2" is a chart showing the Defendant's tracing of the amount she contends, using lowest intermediate balance rule (LIBR), was the Defendant's funds.

8

Case 13-08059   Doc 90   Filed 07/23/15   Entered 07/23/15 13:34:55   Desc Main
Document      Page 9 of 13

Both *Lantz* and *Lichtenberger*, relied on by the Defendant, involved tracing to protect a debtor's exemption and both recognized that Illinois exemptions are to be construed favorably for a debtor. That underlying rationale lead the court in *Lantz* to use LIBR and the court in *Lichtenberger* to use FIFO.

However, in the case before this Court, the Debtor's exemptions are not involved. The case before this Court involves the avoidance provisions of the Bankruptcy Code and thus the underlying rationale in *Lantz* and *Lichtenberger* is not present in this avoidance action.

The starting point is the Seventh Circuit Court of Appeal's decision in *In re Mississippi Valley Livestock, Inc.,* 745 F.3d 299 (7th Cir. 2014). In that case, the court discussed the use of FIFO and LIBR in the context of a preference action under § 547 of the Bankruptcy Code, 11 U.S.C. § 547, another avoidance provision of the Bankruptcy Code, and chose to apply LIBR. In reaching this conclusion the court stated:

> The bankruptcy and district courts were right to recognize that commingled funds require special treatment. But they failed to identify what that special treatment entails. When tracing funds in a commingled account, the lowest-intermediate-balance rule determines the extent of the claimant's interest in the account. *C.O. Funk & Sons, Inc. v. Sullivan Equip., Inc.,* 89 Ill.2d 27, 59 Ill.Dec. 85, 431 N.E.2d 370, 372 (1982); *In re Comm'r of Banks & Real Estate,* 764 N.E.2d at 101. This doctrine assumes that the debtor withdraws its own funds first and leaves the trust funds intact. If the balance of the account dips below the amount of deposited proceeds, the claimant's interest abates accordingly. The claimant's interest does not increase if the debtor later deposits additional funds into the account. Rather, "the claimant has no priority over other creditors to any amount in excess of the lowest intermediate balance." *C.O. Funk & Sons,* 431 N.E.2d at 372-73.

Although the present case is unlike *In re Mississippi Valley Livestock, Inc.* in that it involves a joint bank account, this Court will follow the Seventh Circuit's direction that LIBR applies to determine the tracing of commingled funds.

In applying LIBR, the Defendant uses the dates which the Trustee uses in applying FIFO. The Trustee counters that even if LIBR is the correct method, the relevant time period is from either

9

the inception of the Wachovia Bank account (12/23/02) or when the Debtor was added as an owner to the account (05/15/03). This Court agrees with the Trustee that the dates used in applying FIFO are not applicable under LIBR. This Court finds that the commingling began when the Debtor was added as an owner to the account, so each deposit and withdrawal after May 15, 2003, should be analyzed.

In addition, this Court rejects the Defendant's argument that the remainder of the funds should be divided *pro rata* to both parties after setting aside the lowest intermediate balance, as the funds in the Wells Fargo account were marital property under 750 ILCS 5/503(a). It is well-settled that the concept of marital property is defined only for the purposes of division on dissolution of marriage or legal separation and has no application during the marriage. *In re Snyder*, 436 B.R. 81, 88 (Bankr.C.D.Ill. 2010). In the current case, the Defendant admits that she and the Debtor are married. Thus, this Court finds that the funds in the Wells Fargo joint account do not qualify as marital property. Therefore, the remainder of the funds should not be divided *pro rata*.

The last substantive issue under § 548(a)(1)(B) that needs to be addressed involves the Debtor's financial condition at the time of the transfers. At one point in this litigation, the Defendant contested the issue of whether the Debtor was insolvent on the dates of the transfers. Subsequently, the Defendant admitted the Debtor was insolvent on those dates. Nor does the Defendant's response to the Trustee's motion for partial summary judgment contest the Debtor's insolvency. Therefore, this Court concludes the Debtor was insolvent on the dates of the transfers and that there is no reason to address the other two alternatives involving the Debtor's financial condition.

In conclusion, as to the substantive issues, this Court holds:

1. The Wells Fargo account was a joint account;

2. The funds transferred by ContinuityX to the Debtor were to repay debts owed to the Debtor by ContinuityX;

3. The Debtor's contributions into the Wells Fargo account were not a gift to the Defendant;

4. The funds in the joint account at Wells Fargo do not qualify as marital property for the purposes of this adversary proceeding; and

5. LIBR is the correct method for tracing the Debtor's funds in the joint account at Wells Fargo.

However, before this Court, using LIBR, can determine the dollar amount of the Debtor's interest in the Wells Fargo account, the Trustee and the Defendant must submit their separate positions as to the application of LIBR, consistent with this Opinion .

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###





ATTACHMENT 2